United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Charles Blackwell,                                    No. C 08-1971 MHP (JL)

        Plaintiff,

    v.                                              **REPORT AND RECOMMENDATION**
**RE PLAINTIFF'S MOTION FOR**
Christopher P. Foley, et al.,                         **ATTORNEY FEES AND COSTS**
**(Docket # 37)**

        Defendants.
_____/

    Plaintiff's motion for attorney fees and costs was referred by the district court (Hon. Marilyn Hall Patel) for Report and Recommendation under 28 U.S.C. §636(b). This Court finds the matter suitable for decision without a hearing under Civil Local Rule 7-1(b). The Court carefully considered the moving and opposing pleadings and the record in this case and hereby recommends that Plaintiff's counsel be awarded all fees and costs requested, with minor exceptions as noted. Plaintiff prevailed by obtaining a settlement and Consent Decree; Plaintiff's counsel should be paid at their current hourly rates for work performed; the hours expended were reasonable; Defendant fails to justify any substantial reduction in the fee award.

**I.        Introduction and Factual Background**

    This lawsuit was brought under the Americans With Disabilities Act of 1990 and relevant provisions of California law, to obtain proper access at a public accommodation for

United States District Court
For the Northern District of California

1  physically disabled persons, and to obtain damages for the disabled plaintiff. A motion to

2  obtain an award of attorney fees was filed after unsuccessful efforts by Plaintiff to negotiate

3  settlement as to the amount of Plaintiff's attorney fees, litigation expenses and costs.

4  Plaintiff secured by Consent Decree and Order all injunctive relief sought by the complaint,

5  and payment of $10,000 damages. (The Consent Decree and Order is Exhibit 1 to

6  Declaration of Paul Rein (hereinafter "Rein Dec.").

7          This case evolved from a lunch at the "Citizen Thai" restaurant attended by

8  two of the participants in an "unrelated" lawsuit (*Charles Blackwell v. City and County of*

9  *San Francisco, 1268 Grant Avenue LLC, Christopher Foley, et al*., C-07-4629 SBA

10  *("Blackwell I."*)

11          On November 6, 2007, Charles Blackwell, the legally blind and visually disabled

12  plaintiff in that case, and Barry Atwood, his access consultant in *Blackwell I*, met on the

13  sidewalk adjacent to the Citizen Thai restaurant to examine the location where Mr.

14  Blackwell had fallen and broken his arm on a slippery metal plate embedded in the

15  sidewalk, covering what had been a restaurant's freight elevator, the incident that had given

16  rise to that lawsuit. After their inspection they had lunch inside the Citizen Thai restaurant

17  and Mr. Blackwell encountered access problems on entry and inside the restaurant that

18  affected him as a visually disabled and legally blind person. Plaintiff filed this lawsuit on

19  April 15, 2008 to obtain injunctive relief as to many of the access deficiencies at the

20  restaurant as well as statutory damages.

21          Plaintiff had attempted to seek this relief first by amending the complaint in *Blackwell*

22  *I*, but Defendants  moved under FRCP Rule 12(f) to strike Plaintiff's first amended

23  complaint because he had not obtained "leave of court" to file an amended complaint and

24  the defense counsel –  Mr. Tcheng in that case as in this one –  objected to Plaintiff filing

25  such an amendment. Judge Armstrong granted defendant's motion. Defendants in this

26  case then moved to treat these two cases as "related," which motion Judge Armstrong also

27  denied. (See Exhibit 2 to Rein Dec., 10/22/08 order by Judge Armstrong.) Given their

28  opposition to Plaintiff's attempt to combine the cases by amending his complaint,

**United States District Court**
For the Northern District of California

1   Defendants are estopped from complaining about this action being filed as a separate

2   lawsuit. See Exhibit 11 and ¶ 5 of Rein Dec.

3        A cooperative site inspection by attorneys and experts was held on July 23, 2008.

4   The resulting August 20, 2008 draft report of Plaintiff's expert Barry Atwood (Exhibit 10)

5   was used to formulate injunctive relief demands for remediation at the restaurant which

6   were ultimately reduced  to those contained in Attachment A to the Consent Decree and

7   Order (Rein Decl. Exhibit 1). Mr. Atwood and his associate, access construction expert Karl

8   Danz, remained as Plaintiff's consultants throughout the case. With their assistance,

9   Plaintiff provided memoranda as to the applicable Title 24 regulations. All are addressed in

10  Attachment A to Exhibit 1, providing the details of the barrier removal obtained. A further

11  "cooperative" site inspection by Mr. Atwood and Plaintiff's co-counsel Brian Gearinger, and

12  by defense counsel and their expert, was required as late as December 4, 2009 as part of

13  the settlement process, to see whether certain work performed by Defendants per an

14  "unreasonable hardship" application to the building department had provided usable access

15  at the restaurant's primary entrance at the front (northwest) corner of the building, and to

16  agree on certain other necessary access work.

17       After two years of litigation, Plaintiff sought and obtained injunctive relief pursuant to

18  a Consent Decree and Order (Rein Dec. at Exhibit 1) to require Defendants to make these

19  facilities accessible to disabled persons. Plaintiff also sought and obtained damages and

20  now seeks an award of attorney fees, litigation expenses and costs, pursuant to statute and

21  also per § 11 of the Consent Decree and Order (Rein Dec. Exhibit 1). Paragraph 11 of the

22  Consent Decree stipulates that "the parties agree that attorney's fees, litigation expenses

23  and costs *will be awarded* by motion and Order from the Court." [Emphasis added.]

24       **II.        Procedure for Plaintiff's Attorney Fees, Litigation Expenses and Costs**

25       Per Attachment A to Exhibit 1 of Rein Declaration, the Consent Decree and Order

26  signed by the Court and entered on the court record on January 14, 2010, Defendants

27  agreed to make the subject restaurant accessible to disabled persons, and to do so on an

28  agreed timetable. (Exhibit 1, ¶¶ 8 and 9.) The Consent Decree and Order protected the

public interest, per ADA §§ 308 and 505, and California Code of Civil Procedure § 1021.5. Plaintiff also obtained $10,000 damages, the same amount recovered in *Barrios v. California Interscholastic Federation, et al.,* 277 F. 3d 1128 (9th.Cir. 2002). Exhibit 1 establishes Plaintiff as the prevailing party for obtaining injunctive relief and damages, and entitled to statutory attorney fees. *Id.* Further, Exhibit 1, at ¶ 11, references Plaintiff's right to and procedure for obtaining his attorney fees, litigation expenses and costs:

> 11. The parties have reached an agreement regarding Plaintiff's claims for damages attorney fees, litigation expenses and costs. Defendants agree to pay $10,000 inclusive of all damages being paid to "Paul L. Rein in trust for Charles Blackwell," simultaneously upon receipt of a copy of this Consent Decree fully executed by plaintiff and his attorneys. Further, Defendants agree to file a fully executed Consent Decree within 7 days of receipt of the Consent Decree executed by Plaintiff and his attorneys. Finally, the parties agree that attorney fees, litigation expenses and costs will be awarded by motion and Order from the Court. Such motion will be filed within 60 days of entry of this Consent Decree by the Court, unless parties are able to reach settlement of such issues within 40 days of said entry. Defendants agree to payment in full of attorneys' fees, litigation expenses and costs within 20 days after the Court's Order thereon.

In *Barrios, supra*, a court-enforceable agreement for injunctive relief and payment of $10,000 damages were the specific bases under which the plaintiff in that case was found to be the prevailing party as a matter of law.

**III.     Statutory Bases for Award of Attorney Fees**

**A.     Section 505 of the ADA**

This statute provides for an award of attorney fees, litigation expenses (including expert consultant fees) and costs, for obtaining the injunctive relief (per ADA § 308, the only relief available) under ADA Title III. (See detailed D.O.J. standards 28 C.F.R.§ 36.505.) Alternatively, California Civil Code § 55 provides attorney fees and costs for obtaining injunctive relief, and § 54.3 provides fees for recovery of damages, both to enforce the "full and equal access" guaranteed to disabled persons by § 54.1.

**B.     California Law**

United States District Court

For the Northern District of California

1    Alternatively, fees are available pursuant to Code of Civil Procedure

2  § 1021.5 for obtaining a public interest result:

3    Upon motion, a court may award attorneys' fees to a
     successful party against one or more opposing parties in any action
4    which has resulted in the enforcement of an important right affecting
     the public interest if: (a) a significant benefit, whether pecuniary of
5    nonpecuniary, has been conferred on the general public or a large
     class of persons...

6

7  **IV.    Defendant Christopher Foley opposes the attorney fee motion on a
        number of bases, including that Plaintiff lacks standing.**

8    Defendant Christopher Foley opposes Plaintiff's motion for fees. He argues that

9  Plaintiff lacks standing because he had not actually visited the restaurant before filing the

10 complaint in *Blackwell v San Francisco* (*"Blackwell I"*), asking this Court to consider only

11 Plaintiff's complaint in *Blackwell I,* in deciding whether Plaintiff has standing for an award of

12 fees in this lawsuit, *"Blackwell II,"* despite the fact that Judge Armstrong expressly found the

13 two cases were not related. That case concerned his slip on a sidewalk freight elevator

14 access cover and resulting injury. Plaintiff tried to file a First Amended Complaint and to

15 relate the two cases, but Defendants fought it, persuading Judge Armstrong to strike the

16 Title II claims from Plaintiff's complaint. Plaintiff then filed this case, and the cases

17 proceeded separately. (Ex. F to Pltf Reply brief)

18    With respect to this case (*"Blackwell II"*), Defendant argues that Plaintiff only visited

19 the restaurant as a customer because he was already there with his access consultant to

20 evaluate the allegedly unsafe sidewalk condition. Defendant argues that "his goal was not

21 to access a business establishment and obtain its goods and services, rather plaintiff's goal

22 was to encounter ADA violations." (Opposition at 11:9-10). Defendant cites nothing in either

23 the statute or case law that requires a showing of such an intent by a plaintiff. Plaintiff

24 concedes that motive might have been relevant had this case proceeded to trial, but the

25 case settled, with Defendants agreeing to pay Plaintiff damages of $10,000, and to

26 undertake corrective work to provide access as provided in ¶8 of the Consent Decree

27 (Exhibit 1 to Pltf Reply), including Attachment A, the list of access deficiencies to be

28 remedied, and ¶9, "Timing of Injunctive Relief."

Defendant also challenges Plaintiff's standing, since he is visually impaired, not mobility-impaired. This argument is spurious. Plaintiff's complaint states that he is visually-impaired and cites ADA violations at the Defendants' restaurant that interfere with access for visually-impaired patrons, as well as those that impair access for mobility-impaired patrons. (See Plaintiff's Compliant at ¶12 and 14).

**V.    Plaintiff Is the prevailing party as a matter of law under both the ADA and California law:**

**(A)    Obtaining an enforceable agreement establishes Plaintiff as the prevailing party;**

**(B)    Obtaining a Settlement Agreement to pay damages requires attorney fees payment per California Civil Code § 54.3**

Plaintiff's litigation obtained a court-enforceable Consent Decree and Order, compelling defendant to provide accessible facilities at the Citizen Thai Restaurant, and to pay $10,000 in statutory civil rights damages. As pled in the Complaint and argued in Plaintiff's motion, attorney fees are alternatively available to the prevailing party on any of three bases:

(1) Obtaining a result in the public interest per California Code of Civil Procedure § 1021.5; Maximizing the rights of disabled persons is designated as an important public interest by Government Code § 19230:

> The Legislature hereby declares that (a) It is the policy of this State to encourage and enable individual with a disability to participate fully in the social and economic life of the State and to engage in remunerative employment.

(2)    Obtaining the objectives of the lawsuit's claim for injunctive relief (per § 308 of the ADA, Cal. Civil Code § 55, and Cal. Health & Safety Code § 19953) by obtaining accessible public facilities at this restaurant;

(3) Obtaining statutory damages per Civil Code § 54.3, for violation of § 54.1's guarantee of "full and equal access."

Obtaining damages is an independent basis for an award of statutory attorney fees (Cf. *Hankins v. El Torito Restaurants, Inc., et al.* (1998) 63 Cal.App. 4th 510; *Donald v.*

**United States District Court**
For the Northern District of California

1   *Café Royale* (1990) 218 Cal.App.3d 168).

2       In its affirmation of *Hankins v. El Torito, supra*, the court of appeal upheld a

3   $403,000 award of attorney fees, litigation expenses and costs based on obtaining an

4   award of $80,000 damages, per Civil Code § 54.3.

5       These standards apply in federal court actions which include enforcement of

6   California laws. (*Barrios, supra*.) *Barrios* was followed in *Richard S. v. Dept.of*

7   *Developmental Services,* 317 F.3d 1080 (9th Cir. 2003), holding that a court-enforceable

8   settlement agreement providing either payment of damages or enforceable injunctive relief

9   satisfied the requirements of *Buckhannon Board & Care Home, Inc., et al. v. West Virginia*

10  *Dept. of Health & Human Services, et al.*, 532 U.S. 598 (2001) . As outlined in *Fischer v.*

11  *SJB-P.D., Inc., et al.,* 214 F.3d 1115 (9th Cir. 2000), an ADA Title III access case, and

12  reaffirmed in *Barrios, supra,* the test is, "Whether the plaintiff has obtained an enforceable

13  judgment or settlement that requires the defendant to do something he otherwise would not

14  have to do." (*Id.* at p.1118) The "reasonable" value of these fees must be awarded per the

15  requirements of ADA § 505, California Civil Code §§ 54.3 and 55, and California Code of

16  Civil Procedure § 1021.5.

17      Defendant attempts to convince the Court that Plaintiff should not be awarded fees

18  after rejecting an offer at mediation that was "roughly equal" to what was finally agreed to

19  by the parties. (Supp. Rein Dec. at Exs. 13 and 14; Ex. A to Opposition) Defendant claims

20  that the Court should deny or substantially reduce any post-mediation fees to Plaintiff.

21  Plaintiff argues that, to the contrary, it was Defendant who prolonged post-mediation

22  litigation by reneging on the settlement terms, opposing Plaintiff's motion to enforce the

23  settlement agreement, and causing six additional months of litigation. The mediation took

24  place in April 2009, but the parties only agreed to a settlement in August. Plaintiff filed his

25  motion to enforce the settlement in November, which was never heard by the trial court,

26  apparently because the parties continued to negotiate and ultimately entered into a

27  stipulated Consent Decree in January 2010. Whether or not the terms of the final

28

settlement were "roughly equal" to the terms of the earlier settlement, would not justify

denying Plaintiff's fees for the period when the parties were negotiating after the initial

settlement fell apart. The Court will not attempt to assign blame for the failure of the initial

settlement to stick.

### VI.    All Defendants, landlords and tenants, are jointly and severally liable for Plaintiff's attorney fees, litigation expenses and costs

Regardless of any indemnification agreement among themselves, all Defendants

signed the Consent Decree; and all are jointly and severally responsible for Plaintiff's

attorney fees. Landlord and tenant have joint and several responsibility to Plaintiff for

violation of the ADA. *Botosan v. McNally Realty, et al.*, 216 F.3d 827, 832 (9th Cir. 2000),

cited by the court  in *Kosloff v. Washington Square Assoc.*, 2007 WL 2023497, (N.D. Cal.

2007) held that defendants were "joint and severally liable for all compensation to plaintiff

under the ADA including federally authorized attorney's fees."

Under both federal and California law, liability among defendants for a successful

plaintiff's attorney fees is generally joint and several. *Turner v. District of Columbia Bd. of*

*Elections & Ethics*, 354 F.3d 890 (DC Cir. 2004); *California Trout, Inc. v. Superior Court,*

218 Cal. App. 3d 187, 212, 266 CR 788 (1990); *Corder v. Gates*, 947 F2d 374, 383 (9th

Cir. 1991). It has also been held proper for a court to award fees against one defendant for

time spent litigating against another. *Californians for Responsible Toxics Mgmt. v. Kizer*,

211 Cal. App. 3d 961, 976, 259 CR 599 (1989).

### VII.    The Purposes of the Fee Statutes

### A.    Requirement of an Award of Substantial Attorney Fees

Per statutory provisions by the United States Congress and the California

Legislature to ensure that there are attorneys willing to perform the important function of

securing the rights of disabled persons to "full participation in the social and economic life

of the state" and to "full and equal access," it is necessary to provide substantial

compensation for this work.

Encouraging competent attorneys to handle ADA Title III cases is necessary for

effective enforcement: former California Attorney General Dan Lungren, in a 1993 Opinion,

held that California building officials could not independently enforce the ADA, and that

**United States District Court**
For the Northern District of California

enforcement was left primarily to private lawsuits. (Attorney General's Opinion, No. 93-203.) Previously California Attorney General John Van de Kamp had supported private enforcement lawsuits, and filed amicus curiae briefs on behalf of the plaintiff in both *Donald v. Sacramento Valley Bank,* 209 Cal.App.3d 1183  (1989) and *Donald v. Café Royale, supra*, stressing the limited resources of its Civil Rights Division and supporting the need for private lawsuits to enforce disabled access. Despite efforts made over the last 30 years to encourage attorneys to handle California law disability rights cases which seek public interest injunctive relief (and, since 1990, ADA cases), relatively few competent private attorneys have been willing to do so. Instead, much press attention has been paid to the few attorneys who may have "abused" use of the "ADA" statutes.

**B.     The fee award must be sufficient to encourage competent counsel to undertake difficult public interest cases**

The "fundamental objective" of attorney fee statutes is "to encourage suits effectuating a strong [public] policy by awarding substantial attorney's fees...to those who successfully bring such suits...." *Woodland Hills Residents Ass'n., Inc. v. City Council,* 23 Cal.3d 917, 933 (1979) (Emphasis added). To accomplish this, the award must be large enough "to entice competent counsel to undertake difficult public interest cases." *San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino,* 155 Cal. App.3d 738, 755 (1984). As the court decided in *Woodland Hills*:

> "The Doctrine rests upon a recognition that privately initiated lawsuits are often essential to the effectuation of fundamental public policies...and that, without some mechanism authorizing the award of attorney's fees, private actions to enforce such important public policies would as a practical matter frequently be infeasible."

Defendant also argues that Plaintiff in this case obtained "minimal" relief, not worthy of a substantial fee award.  Defendant submits inadmissible irrelevant photographs of the restaurant prior to remediation, and a recital of a purported building inspector's grant of a dispensation from the disabled access laws due to excessive hardship. Neither of these is relevant to claims under either the ADA or California law. Plaintiff responds that limiting fees by the amount of damages is especially inappropriate where, as here, the amount of the fees was driven up by the defendants' resistance to the lawsuit. *Lipsett v. Blanco*, 975

**United States District Court**
For the Northern District of California

1   F.2d 934, at 939  (1st Cir. 1992). The reason for the fee-shifting provisions of both the ADA

2   and California law is to motivate plaintiffs' attorneys to advocate for full and equal access

3   for the disabled to public accommodations like Defendant's restaurant.

**C.     The amount of damages recovered cannot serve as a cap or limitation on fees**, **especially in cases involving injunctive relief**

4
5        The primary purpose of a lawsuit to enforce ADA Title III is to obtain injunctive relief,

6   the only available ADA remedy. While attorney fees are alternatively available for obtaining

7   plaintiffs' damages, there is no requirement of any "relationship" between the amount of

8   damages and the attorney fees necessarily expended to obtain the injunctive relief of an

9   accessible restaurant as well as damages to the plaintiff. (Cf. 9th Circuit opinion in *Barrios,*

10  *supra,* rejecting defendants' argument that recovery of $10,000 damages was too low to

11  justify award of full attorney fees.)

12       Defendant argues that Plaintiff should not receive fees and costs totaling more than

13  $100,000 when he received damages of only $10,000, citing *McGinnis v. Kentucky Fried*

14  *Chicken*, 51 F.3d 805, 810 (9th Cir. 1994). However, in the *McGinnis* case, the plaintiff

15  received only damages, and no injunctive relief.

16       Indeed, in lawsuits under the ADA itself (unlike the California Civil Rights statutes),

17  only injunctive relief is available and no damages are available. "ADA" Title III damages are

18  always zero; yet Congress specifically offered statutory attorney fees as incentive to

19  encourage attorneys to handle these important cases. (See ADA § 505.) Similarly,

20  damages are not considered the primary purpose of California laws protecting physically

21  disabled persons. Civil Code § 55 and Health & Safety Code § 19953 each require

22  payment of plaintiff's attorney fees when a lawsuit achieves injunctive relief to provide "full

23  and equal access" to the disabled, regardless of whether any damages are paid. Recovery

24  of $10,000 damages, is an additional and significant civil rights victory, especially when

25  minimum statutory damages per Civil Code § 54.3 are only $1,000, and, alternatively,

26  $4,000 per Civil Code § 52.

27       If fees were limited by the amount of damages, no matter how meritorious the

28  clients' claims might be, attorneys simply would not take these cases. This would be

1  contrary to legislative determinations that statutory attorney fees should encourage

2  attorneys to represent disabled persons. Moreover, courts have recognized that limiting fee

3  awards by the amount of damages recovered would be especially inappropriate where the

4  amount of fees was driven up by the defendants' resistance to the lawsuit. (Cf. *Lipsett v.*

5  *Blanco,* 975 F.2d 934, at 939  (1st Cir. 1992) .) The fact that Defendants battled over the

6  terms of the Consent Decree is, if anything, an indication that they didn't consider the terms

7  to be "minimal." Access for people with disabilities is not "minimal"; a facility is either

8  accessible or it isn't. Defendant's restaurant was inaccessible prior to Plaintiff's lawsuit and

9  it was accessible afterwards. End of story.

**VIII.   Plaintiff should be awarded all attorney fees, litigation expenses and costs**

Plaintiff's counsel's work, done in the public interest on a contingent fee "risk" basis, should be fully compensated. (Plaintiff's counsel Paul Rein has also advanced over $13,146 in litigation expenses and costs attributable solely to this case.) (Rein Dec., ¶ 11.) "Where plaintiff has *obtained 'excellent results,' his or her attorney should recover a fully compensatory fee." Wallace v. Consumers Co-Op of Berkeley, Inc.* (1985) 170 Cal.App.3d 836, at 850, quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434-435 (1983).

Important principles for  setting attorney fees for a public interest oriented plaintiff were set out in *Sundance v. Municipal Court* (1987) 192 Cal.App.3d 268, 273:

> The issue posed is whether plaintiffs are entitled to all hours reasonably spent in pursuit of this litigation... In Serrano v. Unruh (1982) 32 Cal.3d 621, 639, the Supreme Court indicated "that, absent circumstances rendering the award unjust, fees recoverable under section 1021.5 ordinarily include compensation for all hours reasonably spent..." It must be remembered that an award of attorneys' fees is not a gift. It is just compensation for expenses actually incurred in vindicating a public right.

All attorneys in this case represent disabled persons in public interest access cases on a contingent fee basis. Attorney fees are awarded, through judgment or settlement, only when the plaintiff prevails, and only on an hourly fee basis; no external funding is received.

1    Defendant argues that attorney Paul Rein should receive $435 per hour,  the rate

2    that he was billing at the time the lawsuit was underway, as opposed to his current rate of

3    $495 per hour, and that all other counsel should be compensated at $250 per hour. Plaintiff

4    submits massive evidence in rebuttal, including supporting declarations and citations to

5    apposite cases. (See Declarations of Sid Wolinsky, Sid Cohen, and Brian Gearinger in this

6    case, and of Richard Pearl at Docket # 191 in the case of *National Federation of the Blind*

7    *v. Target Corporation*, C-06-1802 MHP, 2009 WL 2390261 (N.D.Cal. 2009); Rein Decl. Exs

8    8 and 9, *NFB* order at p. 3).

9    Plaintiff's counsel billed for this case at the following hourly rates:

10   •    Paul Rein: $495

11   •    Brian Gearinger $425

12   •    Julie Ostill $395

13   •    Celia McGuinness $395

14   •    Stephen LaRoe $275

15   •    Ann Winterman $225

16   •    Mykola Kovalenko $175

17   Plaintiff's requested rates are below market rates for attorneys with equal

18   experience, and are supported by declarations of other attorneys, including Sid Wolinsky,

19   whose own rates have periodically been increased by the courts. (Wolinsky Decl. ¶1-13)

20   Furthermore, Plaintiff's counsel are entitled to receive their *current* hourly rates as

21   compensation for the delay in payment. *Missouri v. Jenkins*, 491 U.S. 274 (1989) ("an

22   appropriate adjustment for delay in payment – whether by the application of current rather

23   than historic hourly rates or otherwise- is within the contemplation of the statute.") (internal

24   citation omitted) In that case, the fees were paid several years after services were rendered

25   and the Court found that receiving fees years later that were calculated on the hourly rates

26   in effect at the time the services were rendered would not be equivalent to receiving fees

27   paid reasonably promptly as the legal services were performed, as would be the case with

28   private billings. Defense counsel probably has not waited until now to be paid, but received

their fees as they went along, from 2008 to the present.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Defendant attempts to justify paying Plaintiff's attorneys their former rates by citing

2   four easily distinguishable cases. Two of them are Eastern District cases involving

3   unknown attorneys whose fee rates were "capped" at $250 per hour, until this Eastern

4   District practice was ended by the Ninth Circuit in *Moreno v. City of Sacramento*, 534 F.3d

5   1106, 1111 (9th Cir. 2008).

6    Defendant also attempts to attack Mr. Rein's hourly rate of $495 per hour, asking

7   this Court to reject the declaration of Richard Pearl filed in the *National Federation of the*

8   *Blind* case, on the grounds that it was rejected by the court in *Mannick v. Kaiser Foundation*

9   *Health Plan, Inc., et al.*, 2007 WL 2892647 (N.D.Cal. 2007). Defendant overlooks that Mr.

10   Rein's fees were approved at $435 per hour; it was *Mr. Gwilliam's* fees that were reduced

11   by the court, from $650 per hour, to the same rate as Mr. Rein. Mr. Gwilliam is not on this

12   case. In the *National Federation of the Blind* case, Judge Patel; specifically approved the

13   rates of all attorneys and paralegals, in reliance on the same Pearl declaration. (*NFB* at p.

14   *3)

15    Defendant attempts to persuade this Court to apply fee awards by out of district

16   courts involving attorneys not appearing in this lawsuit. The Court finds that Plaintiff proffers

17   more persuasive examples from within the Northern District, with respect to attorneys

18   appearing in this lawsuit:

19    Other judges in the Northen District have also awarded Rein most of the hours

20   claimed at his current rates at the time of the fee award: *George v. BART*, 2007 WL

21   2778784 (N.D.Cal. 2007) (Judge Wilken) (awarding Rein his then current rate of $435 per

22   hour and 148.689 of the 157.1 hours requested for work from 2003-2007; *Mannick v.*

23   *Kaiser*, (Judge Hamilton) (awarding Rein $435 per hour for work from 2003-2007. In fact,

24   one case is an ADA case against a restaurant, also litigated by Paul Rein, counsel for

25   Plaintiff in this case: *Chavez v. Chevy's* (Judge Henderson) (Rein Supp. Decl. At Ex. 15).

26   Plaintiff brought a fee motion after settlement by a consent decree for $25,000 damages

27   and specified injunctive relief. Rein was awarded his requested rate for 2001-2003, $395

28   per hour, and 98% of requested fees and costs. This Court notes that in that case Judge

Henderson rejected defense challenges to the hours expended: "Defendants would have

United States District Court

For the Northern District of California

1   the Court penalize Mr. Rein for litigating the case in a manner that afforded plaintiff quality

2   representation, and the Court will not do so." (Order at p. 4, 1.1-3) Judge Henderson also

3   rejected defense challenges in that case which were similar to those in this case: that

4   plaintiff's counsel charged for clerical tasks –  "It is lead counsel's responsibility to oversee

5   his staff and ensure that critical, even if mundane steps are completed properly." (*Id.* at

6   1.14-15) Likewise Judge Henderson rejected criticism of "excessive meetings" between co-

7   counsel, finding "they were within the scope of work reasonably to be expected in litigation

8   of this nature and magnitude." (*Id.* at 1.21-22). Regarding criticism of "excessive" time

9   being billed, the court "finds that the time billed in this case is perfectly reasonable, and that

10  spending much less time likely would have jeopardized the quality of counsel's

11  representation." (*Id.* at p. 5, 1.1-3) The court granted Rein's then-current rate of $395 per

12  hour and even granted a multiplier, which counsel is not requesting in this case.

13      Defendant also attempts to nitpick at Plaintiff's fees as having been more paralegal

14  or clerical than legal, in some instances, or representing too many conferences among

15  Plaintiff's counsel, or having been done by experienced counsel rather than more junior

16  associates. Plaintiff argues that the fee requests reflects "billing judgment concerns that

17  should result in a lower award." In fact, Defendant has the burden to rebut the fee request

18  and fails to demonstrate any substantial indication that the hours billed were "excessive,

19  redundant, or otherwise unnecessary. . ." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

20      Plaintiff notes that Defendants criticize Plaintiff for using two attorneys, when

21  Defendant also had two attorneys at most stages of this case. Defendant Christopher Foley

22  is represented by Michael T. Tcheng, and Defendant Thai Speed, dba Citizen Thai, is

23  represented by attorney Janet Brayer, whose clients are not participating directly in this

24  opposition to Plaintiff's motion for fees.

25      In *Chabner, supra*, Judge Patel made comments relevant to Plaintiff's use here of

26  two attorneys and an expert during crucial settlement negotiations:

27      "To demonstrate the alleged excessiveness of plaintiff's billing strategy, defendant
        notes that three attorneys billed time for attending the two oral arguments on
28      plaintiff's motion for summary judgment. The court finds it reasonable that the lead
        attorneys chose to be present during two pivotal points in this complex litigation.
        Defendant fails to explain with specificity how the remaining entries are duplicative

1
2

or multiple. . . Common sense dictates that a single task can be broken down over several discrete time periods and that a number of people might contribute to one end product."

3

Id. at p.*4.

4
5
6
7

Similarly, in *NFB, supra*, Judge Patel rejected defendants' assertion

"that preparation of an expert witness by two attorneys constituted unnecessarily duplicative billing. In fact, it is often more efficient for lawyers with complementary skill sets to cooperate in performing a task. The use of two attorneys for such a task is hardly extravagant."

8

Id., at p.*5.

9
10

Defense counsel Mr. Tcheng, with no particular expertise beyond his own Bar card,

11

attempts to analyze the time sheets of Plaintiff's counsel, objecting to certain percentages

12

of time as excessively spent on certain tasks. As the court did in *Chabner*, this Court

13

rejects this uninformed second-guessing and finds, following a review of Plaintiff's

attorneys' time records, that the hours expended by Plaintiff's attorneys were reasonable.

14
15

Even if more than one attorney worked on a task, that does not show the hours were

excessive. In fact, if anything, an attorney working on contingency is less likely to expend

16

unnecessary hours because the payoff is too uncertain. *Moreno* at 1113.

17

This Court declines to accept the holding in *MacDougal v. Catalyst Nightclub*,

18

(N.D.Cal. 1999), which is inapposite to an ADA access case. Attorneys in these cases do

19
20

not vary their hourly fees according to task – these are hourly statutory fees to be paid by

the defendant. *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1548 (9th Cir.

21
22

1992) (rejecting contention that court must award different fees for different tasks; *Gates v.

Rowland,* 39 F.3d 1439, 1451 (9th Cir. 1994) (Same). See also *NFB* at *5, where Judge

23

Patel rejected defendants' opposition to plaintiffs' counsel charging full rates "for travel time

24

and time used to perform clerical tasks. The Ninth Circuit has established that travel time

25

and clerical tasks are reasonably compensated at normal hourly rates if such is the custom

26

in the relevant legal market." (Citing *Davis*, 976 F.2d at 1543). Four years after the

27

*MacDougal* case, Judge Jenkins awarded attorney Rein almost all of the requested fees

28

1   and costs in *Shapiro v. 3030 Bridgeway*, Civil Case No. C-00-4410 MJJ; (Ex. 16 to Rein

2   Supp. Declaration, adopting Report & Recommendation of Magistrate Judge Spero).

3        Plaintiff concedes that attorney LaRoe's 1.8 hours at $275 per hour should be

4   deducted from the fee award, per Supplemental Gearinger Declaration.

5       **IX.**    **Plaintiff is entitled to compensation for work on this fee motion**

6        Plaintiff is also entitled to attorney fees for preparing this fee motion. In *Ketchum v.*

7   *Moses,* 24 Cal.4th 1122, at 1133-1134 (2001), the California Supreme Court reaffirmed its

8   *Serrano* holding that fee awards should be fully compensatory, "including those relating

9   solely to the fee":

10      We held in *Serrano IV* that, absent circumstances rendering
    the award unjust, an attorney fee award should ordinarily include
11      compensation for all the hours reasonably spent, including those
    relating solely to the fee... We explained that the purpose behind
12      statutory fee authorizations -- i.e., encouraging attorneys to act as
    private attorneys general and to vindicate important rights affecting
13      the public interest -- "will often be frustrated, sometimes nullified, if
    awards are diluted or dissipated by lengthy, uncompensated
14      proceedings to fix or defend a rightful fee claim."

15      **X.**    **Bases for Plaintiff's Attorney Fee Hourly Rates**

16
        **A.**    **Standards for setting an attorney's reasonable hourly rate are   met by**
17             **Plaintiff's attorneys' Declarations, supporting Declarations, and prior**
               **court awards**
18
        In determining Plaintiff's counsel's reasonable hourly rate, the Court must
19
    take into account the following factors:
20
21      1) the time and labor required, (2) the novelty and difficulty of the
    questions involved, (3) the skill requisite to perform the legal service
22      properly, (4) the preclusion of other employment by the attorney due to
    acceptance of the case, (5) the customary fee, (6) whether the fee is fixed
23      or contingent, (7) time limitations imposed by the client or the
    circumstances, (8) the amount involved and the results obtained, (9) the
    experience, reputation, and ability of the attorneys, (10) the
24      "undesirability" of the case, (11) the nature and length of the
    professional relationship with the client, and (12) awards in similar
25      cases.

26  *Morales v. City of San Rafael*, 96 F.3d 359, 363 FN.8, (9th Cir.1996) (citing *Kerr v.*

27  *Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975) cert. denied, 425 U.S. 951,

28  96 S.C. 1726, 48 L.Ed.2d 195 (1976)).

1    As stated by the Court in *Lindy Bros. Builders v. American Radiator,* 540 F.2d 102,

2    117  (3rd Cir. 1976): "As a first principle, the court must recognize that a consideration of

3    'quality' inheres in the 'lodestar' award: counsel who possess or who are reputed to

4    possess more experience, knowledge and legal talent generally command hourly rates

5    superior to those who are less endowed."

6    The Ninth Circuit reached a similar conclusion:

7    Plaintiff's attorneys are entitled to be compensated at rates that reflect the
     reasonable market value of their services in the community. (Serrano v. Unruh,

8    (1982) 32 Cal.3d at 643) Plaintiffs' attorneys' rates here are based on what
     attorneys with comparable skill and experience charge.

9    Affidavits of the plaintiff['s] attorneys and other attorneys regarding
     prevailing fees in the community and rate determinations in other

10   cases, particularly those setting a rate for the plaintiff['s] attorneys
     are satisfactory evidence of the prevailing market rate.

11

12   *United Steelworkers of America v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir. 1990) .

13   Under the Lodestar method, Plaintiff's attorneys are entitled to be compensated for

14   "all hours reasonably spent on the matter." *Serrano IV, supra*, 32 Cal.3d at 763; *Sundance*

15   *v. Municipal Court,* 192 Cal.App.3d 268, 273- 274  (1987). An attorney's sworn testimony

16   that, in fact, it took the time claimed "...is evidence of considerable weight on the issue of

17   the time required..." *Perkins v. Mobile Housing Bd.,* 847 F.2d 735, 738 (11th Cir. 1988). To

18   deny compensation, "it must appear that the time claimed is obviously and convincingly

19   excessive under the circumstances." *Ibid.* Unless Plaintiff's attorneys are reasonably

20   compensated for all their time, the purposes of the private Attorney General statutes will

21   not be met. Plaintiff's attorneys and paralegals have supported their fee requests with

22   sworn declarations and copies of all declarants' time sheets.

23   **B.    The hourly rates requested by Plaintiffs' attorneys are reasonable based
            on their education, demonstrated skills, and specialized experience**

24
25   Plaintiff's attorneys' experience, skill and persistence in this case support an award

     of full fees, as shown by their respective individual declarations. Plaintiff's counsel, Paul L.
26
     Rein, a 1968 honors graduate of Boalt Hall School of Law, has more than 41 years litigation
27
     experience, much of it concentrated in the field of complex disabled access litigation, about
28
     which he has published numerous articles. He has represented disabled persons for 35

**United States District Court**
For the Northern District of California

1   years. Paul Rein's successful handling of leading California published cases establishing

2   the right to accomplish access changes through private lawsuits under California law, such

3   as *Hankins, supra, Donald v. Sacramento Valley Bank, supra,* and *Donald v. Café Royale,*

4   *supra*, are relevant toward establishing Mr. Rein's hourly rate and expertise in this field of

5   law. Also relevant are the two decisions in *Walker v. Carnival Cruise Lines, Inc.,* 63

6   F.Supp.2d 1083 (N.D.Cal. 1999) and 107 F.Supp.2d 1135 (N.D.Cal. 2000), and the

7   published permanent injunction order by Judge Margaret M. Morrow in *Huezo v. Los*

8   *Angeles Community College District (Los Angeles Pierce College,* 672 F.Supp.2d 1045

9   (C.D.Cal. 2008).

10      Brian Gearinger, who has 20 years litigation experience, including working for the

11  San Francisco City Attorney and the large defense firm of Hancock, Rothert & Bunshoft

12  LLP before starting his plaintiffs' disability rights practice in 2004, had his previous rate of

13  $375 per hour approved in 2007 in a binding arbitration on prevailing party attorney fees.

14  (See Gearinger Dec., ¶¶ 2 and 3.)

15      Julie Ostil, a 2000 Boalt Hall honors graduate, was elected President of the Boalt

16  Hall Women's Association. She has more than nine years experience representing disabled

17  persons with varying disabilities. Ms. Ostil, formerly staff attorney for the Deaf Woman's

18  Legal Project at the Law Center for Families in Oakland, representing persons with mobility,

19  hearing, and visual disabilities, joined the Rein Law Office in 2003, and opened her own

20  office in 2008. In the last seven years she was lead attorney or co-counsel in multiple

21  successful disabled access cases, as noted in her accompanying declaration. Ms. Ostil's

22  previous rates were approved in *George, et al. v. BART* (N.D.Cal.) C00-2206 CW (9/21/07

23  Order), and *Mannick v. Kaiser* (N.D.Cal.) (9/28/07 Order) (2007 WL2892647), and *Huezo v.*

24  *Los Angeles Community College District, supra.* (See Ostil Dec., ¶¶ 3-5, 9; Rein Dec., ¶¶

25  48-49)

26      Celia McGuinness, an advocate for her own disabled daughter for the past ten

27  years, also has 18 years litigation experience, after being named Outstanding Oral

28  Advocate in the 1991 California State Moot Court Championships. Ms. McGuinness' hourly

rate is supported by her declaration and by the Declaration of attorney Sidney Cohen, a

United States District Court
For the Northern District of California

1966 Boalt Hall graduate and a civil rights attorney with 42 years litigation experience in the Bay Area.

Attorney Ann Winterman, a 2002 graduate of Boalt Hall who worked on this case in 2007-2008, has filed a declaration which requests only her 2007-2008 hourly rate of $225/hr. (See also Rein Dec., ¶ 50.)

Senior Paralegal Aaron Clefton has supported his rate and hours with a detailed declaration verifying his Phi Beta Kappa undergraduate from the University of Washington in 2004, his unusual and extensive public interest work in Seattle and South Africa, his interrupted law school education; and his extensive duties for more than five years as a senior paralegal and law clerk in the Rein disability rights office. His declaration also references comparative rate surveys from recent Northern District fee orders. (Clefton Dec., ¶¶ 3-5, 10, 11.)

Paralegal Katherine Castro has not prepared a declaration, although she has worked as a legal secretary and paralegal for more than 30 years, and seeks only a baseline rate of $100/hr. for her limited (three hours) work on this case.

**C.      Plaintiffs' attorneys' hourly rates are supported by declarations by other leading civil rights attorneys as to Northern District market rates**

The accompanying declaration of attorney Sid Wolinsky, Chief of Litigation for the respected public interest law firm, Disability Rights Advocates, states that Paul Rein's requested hourly rate of $495/hr. is fully consistent with market rates in the Bay Area for attorneys of commensurate experience and expertise. Mr. Wolinsky states his familiarity with market rates, his personal knowledge of Paul Rein's work and Mr. Rein's "important work in the difficult area of disability rights..." (Wolinsky Dec., ¶¶ 10-13.)

Two other Northern California civil rights and disability rights attorneys filed declarations in *Mannick v. Kaiser, et al.* (N.D.Cal.) C03-5905 PJH: declarations by John Burris (Rein Decl. at Exhibit 5), and by Christopher Whelan (*Id.,* Exhibit 6). They provide their respective backgrounds and their opinions that the proper market rate for Paul Rein in the Northern District was at least $435/hr. for 2003 to 2007.

United States District Court

For the Northern District of California

1    Attorney Sid Cohen, who graduated from Boalt Hall in 1966, and has handled

2  disabled access cases for 20 years, filed a declaration supporting Julie Ostil's current rate

3  of $395 per hour. Ms. Ostil's rate is also supported by a declaration by attorney Patricia

4  Barbosa, who has represented disabled persons for the last 18 of her 23 years as a lawyer,

5  including enforcing disability rights during her years as a California Deputy Attorney

6  General in the Civil Rights Enforcement Unit. (See accompanying declarations by Sid

7  Cohen and Patricia Barbosa.)

8    **D.    Plaintiff's attorneys' requested rates are supported by court**
      **approvals of previous rates for Plaintiff's attorneys**

9
     Six years ago Judge Claudia Wilken, in a 2004 attorney fees Order in *George, et al.*
10
   *v. BART* (N.D.Cal.) C00-2206 CW (p.14, l.13-24), stated:
11
      Paul Rein is a 1968 graduate of Boalt Hall School of Law at the
12     University of California at Berkeley with thirty-five years of
       experience, much of it concentrated in complex disabled access
13     litigation. He has published numerous articles in the disabled access
       field, has lectured to many attorneys and law students and has
14     handled successful litigation which required building modifications
       to provide access for disabled persons to a variety of facilities
15     including banks, hotels, airlines, theaters, universities, gasoline
       service stations, supermarkets, restaurants, hospitals and offices. His
16     $395 per hour rate was also approved by judges of this court in
       Chavez and Shapiro.
17

18    In an order of September 21, 2007, Judge Wilken set Paul Rein's rate for work done

19  in 2005, 2006 and 2007, at $435 per hour, and attorney Julie Ostil's rate at $275 per hour

20  for the same years. (Sept. 21, 2007 Order in *George, et al. v. BART* (N.D.Cal.) Case No.

21  C00-2206 CW.) These rates were also approved by Judge Phyllis Hamilton after another

22  contested attorney fees motion in *Mannick v. Kaiser Foundation Health Plan, Inc., et al.*

23  (N.D.Cal.) (2007 WL2892647), Order of September 28, 2007, for work done from 2003 to

24  2006. These same rates for Mr. Rein and Ms. Ostil were also approved by Judge Martin

25  Jenkins in his March 24, 2008 Order adopting the recommendation of Magistrate Judge

26  Edward Chen in *Saldana-Neily v. Taco Bell of America, et al.* (N.D.Cal.) Case No. C04-

27  4571 MJJ, for work done from 2004-2007.

28    The current requested rate for Julie Ostil, $395 per hour, is also supported by

**United States District Court**
For the Northern District of California

1  Northern District market rate standards. Judge Claudia Wilken, in the September 21, 2007

2  BART decision, supra, and Judge Phyllis Hamilton in the September 28, 2007 Kaiser

3  decision, infra, both approved of Ms. Ostil's then hourly rate of $275 per hour for work

4  performed from 2004 through 2007. Her rate was set at $300 per hour in the November 17,

5  2008 Order in the Central District by Judge Margaret Morrow, for 2006-2008 work in *Huezo*

6  *v. Los Angeles Community College District (Los Angeles Pierce College)* (C.D.Cal.) Case

7  No. CV04-9772 MMM, a case won by summary judgment and a later motion for a

8  permanent injunction, obtaining major college campus access improvements.

9       **E.**     **Plaintiff's attorneys' requested rates are below the Northern**
            **District market rates established by the court in *National***

10              ***Federation of the Blind v. Target Corporation*, 2009 WL 2390261**

11       In *National Federation of the Blind v. Target Corporation*, 2009 WL 2390261 ("NFB"),

12  Judge Patel approved the hourly rates requested by plaintiffs' counsel. The court set the

13  *NFB* rates based upon a market survey of fees in the Northern District of California,

14  conducted by Attorney Richard Pearl, the author of California Attorney Fees, 2nd Edition.

15  From Mr. Pearl's survey, included herein as Exhibit 8, Mr. Rein's hourly rate of $495 is

16  clearly within the median range for attorneys with 40 years experience, especially for those

17  who are experts in their field of law.

18       The attorney fee rates requested in this motion by Paul Rein, Brian Gearinger, Julie

19  Ostil and Celia McGuinness are below those awarded by this Court in *NFB v. Target* for

20  attorneys with less experience, and below the median rates charged by the firms surveyed

21  in Richard Pearl's declaration. In NFB the Court set rates for an attorney who graduated in

22  1985 at $625 per hour; and one who graduated in 1973 at $700 per hour. (See charts from

23  pp.18 and 19 of plaintiff's Target Memorandum, Exhibit 7.) By contrast, Paul Rein, who

24  graduated from Boalt Hall in 1968, seeks approval at $495 per hour. In *NFB* the court set

25  fees for an attorney who graduated in 1995 at $500 per hour. *Id.* By contrast, Celia

26  McGuinness who graduated from law school in 1991, was California State Moot Court

27  champion, has 18 years litigation experience, teaches legal writing at Hastings Law School,

28  and was a professor at U.S.F. Law School, seeks only $395 per hour. In *NFB*, the Court set

fees for an attorney who graduated in 2003 at $425 per hour. *Id.* By contrast, Julie Ostil,

United States District Court
For the Northern District of California

1    who graduated from Boalt Hall with honors in 2000, seeks $395 per hour. Brian Gearinger,

2    who graduated from law school in 1989 and was admitted to practice in 1990, seeks $425

3    per hour. His associate attorneys, Stephen LaRoe and Mykola Kovalenko, seek hourly

4    rates of $275 and $175, respectively. (See Gearinger Dec., ¶¶ 2-4, 5.)

5    **XI.    Plaintiff's out-of-pocket litigation expenses and costs are
            reasonable and should be fully compensated**

6

7    ADA § 505 of the allows recovery of costs and "litigation expenses," including expert

8    witness expenses. (See DOJ Analysis, 28 CFR Pt. 36, App.B, § 36.505, "Litigation

9    expenses include items such as expert witness fees, travel expenses, etc.") Expert witness

10   fees were awarded per § 505 of the ADA in *Chabner v. United of Omaha Life Ins. Co.*,

11   U.S.D.C., C95-0447 MHP. An award of reasonable attorney fees also includes expenses of

12   the type normally billed to a fee-paying client as statutory "litigation expenses" per ADA §

13   505, 28 C.F.R. § 36.505 and Code of Civil Procedure § 1021.5. In this case, the litigation

14   expenses and costs incurred by Plaintiff's attorneys at the Rein Law Office are $13,146. Of

15   this, $11,354 relates to the expert consultant fees of access experts Barry Atwood and Karl

16   Danz, who provided important consultation and reports after their personal site inspections.

17   Mr. Atwood also participated in meetings with Defendants and their experts regarding

18   injunctive relief, attended the mediation, and would have provided significant evidence to

19   support Plaintiff's anticipated motion for summary adjudication had this case not settled.

20   (See Exhibit 10, Atwood report, and see Rein Dec., ¶¶ 6,18, and Group Exhibit 4, for

21   details of litigation expenses and costs necessarily advanced.)

22   As detailed in the Rein Dec., ¶¶ 18 and 51, Plaintiff requests a total of $13,146 in

23   litigation expenses and costs.

24   **XII.   Itemization of Plaintiff's Attorney Fees, Litigation Expenses and Costs
            Through Filing of the motion for attorney fees and costs**

25

26   Plaintiff's attorneys supplied to the Court copies of Plaintiff's counsel's time sheets

27   and billing records and a breakdown of all costs with verifications. Declarations by

     attorneys Paul Rein, Brian Gearinger, Julie Ostil, Celia McGuinness and Ann Winterman,

28   and by paralegals Aaron Clefton and Katherine Castro, support the following computation

of attorney fees, litigation expenses and costs, per ¶ 53 of the Rein Declaration. (Additional "fee work" will be required for Plaintiff's "Reply" memorandum, and for any court hearing.)

**Rein Office Attorney Fees**

Paul Rein, Esq. 82.2 hrs. @ $495/hr.= $40,689

Julie Ostil, Esq. 30.6 hrs. @ $395/hr.= $12,087

Celia McGuinness, Esq. 6.1 hrs. @ $395/hr.= $ 2,410

Ann Winterman, Esq. 10.4 hrs. @ $225/hr.= $ 2,340

Aaron Clefton, Law Clerk 14.1 hrs. @ $165/hr.= $ 2,327

Katherine Castro, Paralegal 2.8 hrs. @ $100/hr.= $ 280

TOTAL         $60,133

**Gearinger Office**

Brian Gearinger, Esq. 67.4 hrs. @ $425/hr.= $28,645

Stephen LaRoe, Esq. 7.2 hrs. @ $275/hr.= $ 1,980

Mykola Kovalenko, Esq.. 7.1 hrs. @ $175/hr.= $ 1,243

TOTAL         $31,868

Total fees for Plaintiff's attorneys fees: $92,001

Litigation expenses and costs: $13,146

Total attorney fees, litigation expenses and costs: $105,147

## XIII.   CONCLUSION

Plaintiff's attorney fees, litigation expenses and costs are reasonable and should be fully compensated. No multiplier enhancement of fees is requested, although this case was handled on a contingent risk basis. Full lodestar fees should be awarded in light of the importance of lawsuits to enforce the rights of disabled persons (cf. *Walker and Adams v. Carnival Cruise Lines, Inc.*, 63 F. Supp. 2d 1083  (N.D.Cal. 1999) ), and the risks that Plaintiff's attorneys took in handling this contested case on a contingent fee basis.

> It must be remembered that an award of attorneys' fees is not a gift. It is just compensation for expenses actually incurred in vindicating a public right. To reduce the attorneys' fees of a successful party because he did not prevail on all his arguments, makes it the attorney, and not the defendant, who pays the cost of enforcing the

United States District Court

For the Northern District of California

1    public right.

2    *Sundance v. Municipal Court* (1987) 192 Cal.App.3d 268, 273

3        Obtaining the court-enforceable Consent Decree achieved all of Plaintiffs'

4    public interest objectives as to injunctive relief under the ADA and California law, in addition

5    to recovery of significant state law damages for the disabled plaintiff. Plaintiff's counsel are

6    entitled to their full attorney fees, litigation expenses and costs, with the minor exceptions

7    noted in the body of this Report.

8        Respectfully submitted

9    DATED: July 1,  2010

10

11                                                    _____
                                                     JAMES LARSON

12                                                   United States Magistrate Judge

13

14

15

16   G:\JLALL\CASES\CIV-REF\08-1971\R&R 37.wpd

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California